UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KENESTO, INC. (formerly PLMPLUS, INC.),   )
                                          )
                    Plaintiff,            )      C.A. No. 1:11-cv-11952-DPW
          v.                              )
                                          )
GUY ALROY,                                )
                    Defendant.            )

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Matthew P. Horvitz
**COOLEY MANION JONES LLP**
21 Custom House Street
Boston, MA 02110
617-737-3100
617-670-8732 (fax)
mhorvitz@cmjlaw.com
*Attorney for the Defendant, Guy Alroy*

## <u>TABLE OF CONTENTS</u>

**Introduction** ...................................................................................................... 1

**Jurisdictional Facts** ........................................................................................... 2

**Legal Argument** ................................................................................................. 7

    I.   The Complaint Should be Dismissed under Federal Rule of Civil Procedure 12(b)(2) Because the Court Lacks Personal Jurisdiction Over the Defendant ................................. 7

        A.  The Company's claims do not arise out of, and are not related to, Alroy's in-state activities ............................................................................... 8

        B.  Alroy did not purposefully avail himself of the laws of Massachusetts .................... 11

        C.  It would not be reasonable for the Court to exercise jurisdiction over Alroy ............ 13

    II.  Alternatively, This Action Should be Dismissed Under the Doctrine of Forum Non Conveniens ............................................................................................................ 16

    III. The Mandatory Forum Selection Clause in the Employment Agreement Applies to the Plaintiff's Claims ................................................................................................... 18

**Conclusion** ...................................................................................................... 21

## <u>INTRODUCTION</u>

This action is in retaliation for a lawsuit now pending in Israel.  The defendant, Mr. Guy Alroy ("Alroy"), a citizen and resident of Rosh Ha'ayin, Israel, respectfully moves this Court for an order dismissing the plaintiff's amended complaint (ECF No. 9) under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, as well as under the doctrine of forum non-conveniens.  The factual assertions and specific claims alleged against Alroy in this action occurred in Israel and were not directed toward Massachusetts.

The plaintiff, Kenesto Corp., is a Delaware corporation with a wholly-owned Israeli subsidiary, Kenesto LTD (jointly, the "Company").  Alroy founded the Company and is a former employee, officer, and director.  After he resigned from the Company, Alroy filed a lawsuit in Israel regarding his employment and other services he provided to the Company.  Although that lawsuit remains pending in Israel, the Company has responded by filing this parallel action in Massachusetts.  The Massachusetts lawsuit represents an effort by the Company to punish Alroy for exercising his protected rights, manufacture leverage against Alroy, and force him to either drop his legitimate claims in Israel or spend a considerable amount of resources defending himself in a distant jurisdiction with little connection to the specific claims alleged against him.

Relevant to this motion is the Court's lack of personal jurisdiction.  Alroy does not have the requisite minimum contacts with Massachusetts required for this Court to exercise jurisdiction over him; therefore the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(2).  Moreover, this action also should be dismissed under the doctrine of forum non conveniens because the relevant private and public convenience factors weigh in Alroy's favor.  Finally, the mandatory forum selection clause the parties' contractual agreement require the Company to bring its claims against Alroy before the Tel-Aviv Regional Labor Court in

Israel.  Accordingly, as detailed below and in the accompanying Declarations, this Court should dismiss the Company's amended complaint.

## JURISDICTIONAL FACTS

This lawsuit is directed at Guy Alroy's purported acts and omissions while he was an employee, director, and officer of the Company.  (*See* Am. Compl., ECF No. 9 (the "Complaint"), ¶¶ 2, 3.)  Mr. Alroy emphatically and unequivocally denies the Company's allegations.  After Alroy filed an action in Israel for unpaid compensation under his employment agreement, the Company retaliated by initiating this related proceeding approximately 5,500 miles away from Israel, which is the location of the Company's principle place of business, Alroy's residence, and where a lawsuit is pending between the same parties in the Tel-Aviv Regional Labor Court.  (Declaration of Guy Alroy ("Alroy Dec."), ¶ 5 et seq.)

Noticeably absent from the Complaint's allegations is any specific connection to Massachusetts.  (Alroy Dec., ¶¶ 5, 8–29.)   The claims alleged in the Complaint not only occurred in Israel, but Israel is where the Company's employees, research and development, and primary operations were located while Alroy was with the Company, where Alroy worked for the Company and served on its board, the place of Alroy's citizenship and residence, and the forum the parties selected in their contractual agreement for the adjudication of disputes.  (*Id.*)  Thus, and further detailed below, the facts alleged by the plaintiff regarding the specific claims in the Complaint are not associated with Massachusetts sufficient to confer personal jurisdiction over Alroy.

Guy Alroy is a citizen and resident of Rosh Ha'ayin, Israel, and an officer with the rank of Major in the Israeli Defense Forces.  (Alroy Dec., ¶¶ 1, 4.)  In 2001, Alroy founded a software and consulting company named EDMISO LTD ("EDMISO"), located in Rosh Ha'ayin, Israel.

(*Id.* ¶ 6.)  EDMISO remains an active company and has not conducted any business in Massachusetts, does not have any customers or contracts in Massachusetts, does not own, lease, or rent any property in Massachusetts, and does not have a registered agent in Massachusetts. (*Id.*)

In or about July or August 2008, Alroy started another company with a business partner, Benny Shaviv ("Shaviv").  (Alroy Dec., ¶ 7.)  Alroy and Shaviv intended to develop project lifecycle management ("PLM") software with this new venture.  (Alroy Dec., ¶ 14.)  Their company initially was named InnovaShare, but later renamed to "PLMplus" and, more recently, "Kenesto."  (*Id.* ¶ 7.)  When Alroy and Shaviv founded the Company, it did not have a product, but only a concept for web-based PLM software designed for small- and medium-sized businesses.  (*Id.* ¶ 14.)  The Company was structured with a parent corporation organized under Delaware law (InnovaShare, Inc., then PLMplus, Inc., and now Kenesto Corp.) and a wholly-owned Israeli subsidiary (InnovaShare LTD., then PLMplus LTD., and now Kenesto LTD).  (*Id.* ¶ 8.)  The Company's business and operations were headquartered in and conducted from its offices in Israel.  (*Id.*)  In fact, the Company initially used EDMISO's offices in Rosh Ha'ayin until separate office space in Israel was located.  (*Id.*)  The Company was structured so that the Delaware corporate entity operated as a holding company and received venture capital investment, while the Israeli entity was responsible for the research, development, and sales of the Company's software product, as well as operating and maintaining its employees and offices—all of which were located in Israel.  (*Id.* ¶¶ 9, 10.)

Alroy also entered into an employment agreement with the Company (the "Employment Agreement").  (Alroy Dec., ¶ 11; *see* Am. Compl., ¶¶ 38–45.)  The Employment Agreement contains a forum selection and choice of law provision, requiring the laws of the State of Israel

and "the sole and exclusive place of jurisdiction in any matter arising out of or in connection

with this Agreement shall be the Tel-Aviv Regional Labor Court."  (Alroy Dec., ¶ 12.)

The Company obtained venture capital investment from two companies: Cedar Fund III,

L.P. ("Cedar Fund") and Hasso Plattner Ventures Management GmbH ("HPV").  (Alroy Dec. at ¶

13; *see* Am. Compl. ¶¶ 12–13.)  Cedar Fund has offices in Herzelia, Israel and Waltham,

Massachusetts.  HPV has offices in Potsdam, Germany.  (Alroy Dec, ¶ 13.)  After the Company

obtained financing from Cedar Fund and HPV, it began development of a PLM software product.

(*Id.* ¶ 14–15.)  Theses efforts occurred in Israel: the Company hired employees in Israel,

maintained office space in Israel, and the Company's PLM software research and development

efforts occurred in Israel.  (*Id.* ¶ 15.)  As a shareholder, director, employee, and CEO of the

Company (both the Delaware and Israeli entities), Alroy was located in Israel and conducted the

Company's daily business from its headquarters in Israel.  (*Id.* ¶ 16.)  The Company did not have

operations in Massachusetts, or anywhere else in the United States.  (*Id.* ¶ 17–18.)  The

Company's offices, employees, business operations, and research and development activities

were located in Israel.[1]  (*Id.*)

While Alroy served as a director on the Company's board, all meetings were held in

Israel.  (Alroy Dec., ¶ 19.)  Alroy's expenditures of corporate funds and his management of the

Company occurred in Israel—not Massachusetts.  (*Id.*)  Alroy's wife was employed by the

Company and his step-son provided the Company with free technical input.  (*Id.* ¶¶ 21–22.)  All

of this work occurred in Israel and was either approved in advance by the Company or unpaid.

(*Id.*; *see* Am. Compl., ¶¶ 24–26.)  While Alroy was with the Company, its equipment referenced

in paragraphs 27 et seq. of the Complaint was located in Israel.  (*Id.* ¶ 23.)  During Alroy's time

---

[1] The Massachusetts' Secretary of the Commonwealth's Corporate Database reflects that the Company currently
does not have a place of business in Massachusetts, but maintains a mailing address "care of" the Cedar Fund's
address in Waltham, MA.  (Alroy Dec., ¶ 18.)

with the Company, its checks, operating accounts, invoices, payroll, and other records were located in Israel.  (*Id.* ¶ 23; *see* Am. Compl., ¶ 27.)

Alroy's involvement with the Company's investment rounds, as alleged in the Complaint, occurred while he was in Israel.  (Alroy Dec., ¶ 24.)  Alroy's purported failure to disclose development problems with the Company's software product, the removal of Shaviv from the Company, and the purported waste of investor funds all occurred in Israel—not Massachusetts. (*Id.* ¶¶ 5, 7–10, 13–17, 19–27; *see* Am. Compl. ¶¶  14–20.)

The external audits of the Company's product, referenced in the Complaint, were conducted by Doron Green and Laurent Alt.  (*Id.* ¶ 28.)  Doron Green is located at Alexander Penn 4, Tel-Aviv, Israel.  (*Id.*)  Laurent Alt is located at 4 Avenue du Soleil Levant, Conflans Sainte Honorine, France.  (*Id.*)  Both of these audits occurred at the Company's offices in Israel—not Massachusetts.  (*Id*; *see* Am. Compl. ¶ 29–30.)

In 2011, after Michael Payne ("Payne") was selected as the Company's new CEO, Payne travelled to Israel to meet with Alroy, review the Company's records, and begin the transition process.  (Alroy Dec., ¶ 26.)  Alroy and Payne's meeting occurred at the Company's offices in Israel; Alroy did not travel to Massachusetts in connection with Payne's transition to CEO of the Company.  (*Id.*)  Thereafter, Alroy provided the Company with notice of his resignation pursuant to the Employment Agreement.  In response, Payne sent him a letter containing allegations similar to those in the Complaint.  (Alroy Dec., ¶ 27.)  This correspondence was on letterhead with the Company's Israeli address, "PLMplus Ltd., 11 Haamal Street, Rosh HaAyin, Israel 48092," and signed by Mr. Payne.  (*Id.*)

After Alroy's resignation, the Company failed to provide him with the compensation and benefits due and owing under the Employment Agreement.  Alroy filed suit against the Company

on June 23, 2011 in the Tel-Aviv Regional Labor Court (the "Israel Lawsuit").  (Alroy Dec., ¶ 32; Declaration of Steven H. Glassberg ("Glassberg Dec."), Ex. A, B.)  In the Israel Lawsuit, Alroy asserts that the Company failed to pay the compensation due and owing to him under the Employment Agreement and seeks compensation for damage to his professional standing and reputation.  (Glassberg Dec., Ex. B.)  In addition to damages accruing under the Employment Agreement, Alroy also seeks damages arising from the services he provided to the Company after his resignation.  (*Id.*)  The section entitled "Relevant Facts in Chronological Order" in the Company's responsive pleading in the Israel Lawsuit alleges virtually identical facts (which Alroy denies) as found in the Complaint.  (Glassberg Dec., Ex. C at ¶¶ 5–19.)  As such, the underlying facts concerning the parties' claims and defenses in this lawsuit and the Israel Lawsuit are coextensive. [2]

As demonstrated above, the specific facts underlying the Complaint, and the causes of action therein, transpired in Israel.  Any speculative or attenuated connections between Alroy and Massachusetts are inadequate to confer jurisdiction under the Massachusetts long-arm statute or Due Process Clause of the Constitution.  Moreover, this action should proceed in Israel under the doctrine of *forum non conveniens* and the mandatory forum selection clause in the Employment Agreement.  The Complaint should be dismissed.

---

[2] This document contains a self-serving disavowal of any connection with the proceeding in the District of Massachusetts.  That statement is contradicted by the substance of that document.  The "relevant facts" and assertions offered by the Company in defense of the Israel Lawsuit are substantively comparable to the Complaint in this action.  More importantly, the Company's decision to include that explicit disclaimer reveals its true intentions, namely, to punish Mr. Alroy for exercising his protecting rights and force him to litigate a parallel action in a distant forum.  (*See* Alroy Dec., ¶ 34.)

## LEGAL ARGUMENT

I.   **The Complaint Should be Dismissed under Federal Rule of Civil Procedure 12(b)(2) Because the Court Lacks Personal Jurisdiction Over the Defendant.**

Personal jurisdiction is a threshold requirement.[3]  *See DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 78 (1st Cir. 2000).  "On a motion to dismiss for want of *in personam* jurisdiction … the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists."  *Art Tech. Group, Inc. v. Puritan's Pride, Inc.*, 716 F. Supp. 2d 93, 97 (D. Mass. 2010) (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998)). "[T]o meet its burden, the plaintiff must 'demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution.'"  *Art Tech. Group*, 716 F. Supp. 2d at 98.  Under this standard, "the court will look to the facts alleged in the pleadings and the parties' supplemental filings, including affidavits."  *Id.* (quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1385 (1st Cir. 1995)). The Massachusetts long-arm statute is construed as coextensive with the limits permitted by the Constitution; therefore, the Court may "turn directly to the constitutional test for determining specific jurisdiction."[4]  *Adelson v. Hananel*, 652 F.3d 75, 80 (1st Cir. 2011).  "The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate:  1) whether the claims arise out of or are related to the defendant's in-state activities;  2) whether the defendant has purposely availed itself of the laws

---

[3] Jurisdiction over a corporate officer may <u>not</u> be based on jurisdiction over the corporation itself.  *LaVallee v. Parrot-Ice Drink Prods. Of Am.*, 193 F. Supp. 2d 296, 300 (D. Mass. 2002).  Instead, the Court must determine whether there is an independent basis for personal jurisdiction over Mr. Alroy as an individual.  *Id.*; *accord Yankee Group, Inc. v. Yamashita*, 678 F. Supp. 20, 22 (D. Mass. 1988).

[4] Mr. Alroy is a citizen and resident of Israel, does not own, lease, or use any property in Massachusetts, and does not conduct regular business in Massachusetts.  Since general jurisdiction cannot be established over Mr. Alroy, the relevant analysis falls under the rubric of specific jurisdiction.  *See Pettengill v. Curtis*, 584 F. Supp. 2d 348, 358 (D. Mass. 2008); *Harrelson v. Seung Heun Lee*, 798 F. Supp. 2d 310, 315 (D. Mass. 2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.")  (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ---, 131 S. Ct. 2846 (2011)).

of the forum state and 3) whether the exercise of jurisdiction is reasonable under the circumstances." *Pesmel N. Am., LLC v. Caraustar Indus., Inc.*, 754 F. Supp. 2d 168, 172 (D. Mass. 2010). The Company cannot satisfy its burden of showing jurisdiction exists over Alroy.

### A. The Company's claims do not arise out of, and are not related to, Alroy's in-state activities.

The Company cannot satisfy its burden of establishing the "relatedness" factor for specific personal jurisdiction because the specific claims in the Complaint are not connected to Alroy's activities in Massachusetts. This factor focuses on whether "the claim underlying the litigation … directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." *Astro-Med, Inc.*, 591 F.3d at 9. The Company must show "a demonstrable nexus between [its] claims and [the defendant's] forum-based activities, such … [that] the litigation itself is founded directly on those activities.'" *Hannon,* 524 F.3d at 280 (quoting *Mass. Sch. of Law at Andover,* 142 F.3d at 34). "The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *Sawtelle*, 70 F.3d at 1389; *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 2009) ("Questions of specific jurisdiction are always tied to the particular claims asserted.").

The Complaint asserts claims of breach of fiduciary duty (¶¶ 50–55) corporate waste and mismanagement (¶¶ 56–62), breach of the implied covenant of good faith and fair dealing (¶¶ 63–66), and a declaratory judgment claim regarding indemnification obligations arising from those claims (¶¶ 67–72). These claims are premised on the same factual allegations, namely, that Alroy breached his Employment Agreement and interrelated duties owed to the Company during his tenure with the Company and the period of time immediately after he resigned by:

(i) falsely causing the dismissal of co-founder Mr. Shaviv; (ii) treating the Company as Defendant's own personal property; (iii) failing to account his actions to the Company's Board; (iv) unilaterally hiring his wife as a Company employee and permitting his son to use Company offices without authorization; (iv) failing to disclose the actual status of the Company's only Product, instead intentionally covering up development problems with the Product; (v) misusing and wasting corporate funds and assets; (vi) baselessly claiming purported ownership to Company assets and equipment; (vii) failing to cooperate with the Company in connection with transitioning his role to the new CEO; and (viii) impeding and attempt blocking critical investment rounds; and (ix) continuing to operate his own personal company to the detriment of the Company and its shareholders.

(Am. Compl., ¶¶ 54, 65; *see id.* at ¶¶ 57–60, 71.)

For jurisdiction over tort claims, the Massachusetts long-arm statute provides that the Court has personal jurisdiction over a party that "caus[es] tortious injury by an act or omission in this commonwealth." M.G.L. c. 223A, § 3(c). The inquiry is focused on "whether the plaintiff has established cause in fact (i.e., the injury would not have occurred but for the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." *Mass. School of Law at Andover*, 142 F.3d at 35 (internal quotation marks and citation omitted); *see Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005) ("although proximate causation is not a per se requirement of specific jurisdiction, its presence or absence is still important."). The Complaint does not allege any activity by Alroy in Massachusetts that would establish either cause-in-fact or legal cause.

Further, "a breach of fiduciary duty occurs where the fiduciary acts disloyally." *Philips Exeter*, 196 F.3d at 291. Thus, "[t]hat Plaintiff felt the effects of an alleged breach in Massachusetts is insufficient: there must be evidence that Defendants committed an act of disloyalty in the state." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 138 (1st Cir. 2006). Alroy's actions, decisions, and purported omissions alleged in the Complaint occurred while he was located in Israel. Thus, the Complaint's claims sounding in tort do not provide a

jurisdictional basis over Alroy in Massachusetts.

For jurisdiction over contract claims, "a contract arguably is breached where a promissory fails to perform." *Philips Exeter*, 196 F.3d at 291. "In contract cases, the court … must look to elements of the cause of action and ask whether the defendants' contacts with the forum were instrumental either in the formation of the contract or in its breach." *Id.* at 289. The contract alleged in the Complaint, the Employment Agreement, has no connection with Massachusetts. The negotiations over this contract, contemplated and actual performance there under, and choice of law and forum selection provision, demonstrate that Alroy did not purposefully establish minimum contacts with Massachusetts with respect to his Employment Contract. *See Gemini Investors, Inc. v. Ameripark, Inc.*, 542 F. Supp. 2d 119, 123 (D. Mass. 2008).

The Complaint's contract-based claims do not provide the Court with a basis for asserting jurisdiction over Alroy. The count in the Complaint for breach of the "implied covenant of good faith and fair dealing" arising "under Massachusetts law" does not rely on a specific contract. (*See* Am. Compl, pp. 11–12.) This claim, therefore, is facially deficient. The existence of a contract is a foundational prerequisite under Massachusetts law for a claim under the implied covenant of good faith and fair dealing. *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005) ("to demonstrate a claim for the breach of the covenant of good faith and fair dealing, 'the plaintiff must show that there existed an enforceable contract between the two parties'"); *Moore v. NovaStar Mortg. Inc.*, No. 11-cv-10468-MAP, 2011 WL 2899418, at *2 (D. Mass. Jul. 15, 2011) ("where there is no contract, 'there can be no derivative implied covenant of good faith and fair dealing …'"); s*ee Urban v. Fed. Home Loan Mortg. Corp.*, No. 11-10915-FDS, 2012 WL 245246, at *7 (D. Mass. Jan. 25, 2012) ("The covenant may not be

invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship.").  The only contract plead in the Complaint is the Employment Agreement, which is not subject to Massachusetts law by virtue of its choice of law and forum selection provision.

Although the First Circuit encourages a separate analysis of tort and contract claims, "in cases such as this where several tort claims are intertwined with contractual agreements, the inquiries may 'resemble each other.'"  *Berman Devalerio Pease Tabacco Burt & Pucillo v. Rubinstein*, No. 1:07-cv-12127, 2008 WL 7593022, at *5 (D. Mass. Feb. 28, 2008).  Similarly, the declaratory judgment claim is a companion claim to the Company's contract and tort claims, and should be adjudicated in the same forum as the primary counts in the Complaint to avoid the risk of piecemeal litigation.  *See DP Envtl. Servs., Inc. v. Bertlesen*, 834 F. Supp. 162, 166 (M.D.N.C. 1993) ("The remedy of a declaratory judgment should not be accorded to "try a controversy by piecemeal, or to try particular issues without settling the entire controversy.").  As evidenced by the allegations in the Complaint, the contract and tort claims in this lawsuit overlap extensively.  (*See* Compl. ¶¶ 54, 65, 57–60, 71.)  Relevant here is a common thread running through these claims: Alroy's lack of contact with and conduct in Massachusetts in any jurisdictionally meaningful way.

**B.      Alroy did not purposefully avail himself of the laws of Massachusetts.**

"Purposeful availment represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior."  *J. McIntyre Mach., Ltd. v. Nicastro*, --- U.S. ---, 131 S.Ct. 2780, 2787–88 (2011).  The Company cannot demonstrate that Alroy's contacts with Massachusetts "represent a purposeful availment of the privilege of

conducting activities in [Massachusetts], thereby invoking the benefits and protections of

[Massachusetts'] laws and making [his] presence before [Massachusetts'] courts foreseeable."

*Daynard v. Ness,* 290 F.3d 42, 62 (1st Cir. 2002).  The inquiry under this prong "focuses on the

defendant's intentionality" and "is only satisfied when the defendant purposefully and

voluntarily directs his activities toward the forum so that he should expect, by virtue of the

benefit he receives, to be subject to the court's jurisdiction based on these contacts."  *Acronis,*

*Inc. v. Lucid8, LLC*, C.A. No. 11-10772, 2011 WL 5117669 at *7 (D. Mass. Oct. 26, 2011)

(quoting *Swiss Am. Bank,* 274 F.3d at 623-24).  These contacts must be voluntary and "not based

on the unilateral actions of another party."  *Adelson,* 510 F.3d at 50.  Merely "random, isolated or

fortuitous" contacts with the forum state are insufficient for jurisdiction.  *Id.* (quoting *Sawtelle*,

70 F.3d at 1391).  This jurisdictional inquiry requires more than a showing that a defendant

entered into a relationship with one present in the forum state.  Rather, the defendant's

relationship *with the forum* must be shown to have been voluntary.  There must be evidence that

the defendant actually reached out to the forum state to create a relationship.  *See Philips Exeter*,

196 F.3d at 292.  With foreseeability, the relevant issue is the extent to which the defendant

benefitted from its contacts with the forum state.  *Id.* at 288.

 Alroy did not voluntarily or foreseeably direct the activities subject to the claims in the

Complaint toward Massachusetts.  The only connection to Massachusetts relevant to this lawsuit

is that the Cedar Fund has an office in Waltham, MA in addition to its office in Israel.  This is

insufficient to meet the purposeful-availment prong.  Alroy's employment agreement with the

Company—comprised of Delaware and Israeli entities—was entered into in Israel and is subject

to Israeli law.  *C.f. Gemini Investors Inc. v. Ameripark, Inc.*, 542 F.Supp.2d 119, 124 (D. Mass.

2008) (explaining that party established a continuing obligation between itself and Massachusetts

when it entered into a contract with a Massachusetts corporation that was executed in Massachusetts after months of negotiations with Massachusetts residents).  In addition, Alroy's performance as an employee, officer, and director of the Company was not directed at Massachusetts.  The activities he performed for the Company, which are now subject to this lawsuit, occurred in Israel and were not specifically directed to Massachusetts.

**C.      It would not be reasonable for the Court to exercise jurisdiction over Alroy.**

Even if the Company demonstrates the relatedness and purposeful availment factors (it cannot), this Court must still determine whether the exercise of personal jurisdiction over Alroy comports with "fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *United Elec., Radio and Mach. Workers of Amer. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992) ("even where purposefully general contact exist, courts … consider a panoply of other factors which bear upon the fairness of subject a nonresident to the authority of a foreign tribunal.").  The First Circuit has labeled these the "Gestalt factors":

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Adelson*, 510 F.3d at 49; *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 26 (1st Cir. 2005).[5]  The Gestalt factors do not favor the exercise of jurisdiction over Alroy.

**_Defendant's burden of appearing_:**  "[I]t usually will not be unfair to subject [a nonresident defendant] to the burdens of litigating in another forum for disputes relating to [in-forum economic] activity."  *Burger King*, 471 U.S. at 474.   Nonetheless, the Court's exercise of

---

[5] The Court has adopted a sliding scale approach: "[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction."  *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996) (quoting *Ticketmaster*, 26 F.3d at 210).

jurisdiction may be inappropriate when the burden would be "'onerous in a special, unusual, or other constitutionally significant way.'"  *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995); *see Ticketmaster*, 26 F.3d at 210 (noting the importance of considering the distance the defendant must travel in giving weight to this factor in the analysis). As an individual resident of Israel with no contacts or business in the United States, the monetary and time expense of travel to Massachusetts would be considerable for Alroy.  Significantly, Alroy commands a unit of over 200 officers and soldiers in the Israeli Defense Forces.  (Alroy Dec., ¶ 4.)  Alroy's reserve duties are extensive, and he must remain close to Israel due to the current geopolitical instability in countries bordering Israel, and the genuine potential that he may be ordered to mobilize his unit in response to an alert.  (*Id.*)  Having to appear and litigate this lawsuit in Massachusetts would present Alroy with a special and unusual burden.

This gestalt factor "allows a court to guard against harassing litigation." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 211 (1st Cir. 1994) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  "It is firmly settled that a plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy."  *Id.* (internal quotation marks omitted).  Alroy should not have to defend this action while a prior, analogous lawsuit is pending in Israel.  (*See* Glassberg Dec., Ex. C.)  The Company filed this lawsuit in Massachusetts to harass Alroy and create a financial burden for him.  (*See* Alroy Dec., ¶ 34.)  As a forum for this dispute, Massachusetts presents a multitude of obstacles with gaining access to sources of proof in Israel, the availability of compulsory process for witnesses in Israel, the costs of obtaining witnesses and tangible evidence from Israel, and the other practical problems of litigating this action in Massachusetts when the relevant events, witnesses, and evidence are located primarily in Israel.

***The forum state's adjudicatory interest:***  Massachusetts does not have an overriding interest in adjudicating this dispute.  The acts constituting Alroy's alleged conduct occurred outside of Massachusetts and the Company is not a domestic Massachusetts corporation.  In addition, Massachusetts does not have an interest in enforcing its laws, since both the contractual dispute between Alroy and the Company and the alleged tortuous conduct will be governed by the laws of the State of Israel.  *See Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1074–75 (S.D.N.Y. 1992) (discussing conflict of laws analysis in the context of forum non conveniens).

***Plaintiff's interest in obtaining relief***:  The third factor, which relates to convenience of the venue to the plaintiff, does not weigh in the plaintiff's favor.  Although "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience," *Sawtelle*, 70 F.3d at 1395, it is not more convenient for the Company to pursue this action in Massachusetts than Israel.  The Company has offices, witnesses, and documents in Israel, and the Company is fully involved in litigating the merits of the Israel Lawsuit.

***The administration of justice:***  The judicial system's interest in obtaining the most effective resolution of the controversy does not favor Massachusetts as the forum.  "Generally this factor is a wash, unless the Court perceives the threat of piecemeal litigation."  *Bartow v. Extec Screens and Crushers, Ltd.*, 53 F. Supp. 2d 518, 528 (D. Mass. 1999) (citing *Nowack v. Tak How Investments*, 94 F.3d  708, 718–19 (1st Cir. 1996)).  "The judicial system's interest in obtaining the most efficacious resolution of the controversy similarly counsels against furcation of [this] dispute among several different jurisdictions."  *Pritzker*, 42 F.3d at 64.  "Such a result would both contravene the goal of judicial economy and conjure up the chimera of inconsistent outcomes."  *Id.*  As such, it is in the interests of efficiency and justice to litigate all of the claims concerning Alroy's employment and actions with the Company together in the Israel Lawsuit,

rather than permit overlapping claims to proceed in two different jurisdictions.

   ***Policy Considerations***:  Here, there are no overriding interests of Massachusetts implicated in this case.  The injuries alleged in the Complaint did not occur in this forum, the Company is a foreign corporation, and this Court should avoid asserting jurisdiction over a non-resident person who lacks any meaningful connections with Massachusetts.

## II.   Alternatively, This Action Should be Dismissed Under the Doctrine of Forum Non Conveniens.

   This Court has the inherent power to dismiss an action on the basis of forum non conveniens. [6]  *American Dredging Co. v. Miller*, 510 U.S. 443 (1994).  This doctrine, based on common law, applies when a choice is presented between a United States and a foreign forum. *Capital Currency Exchange, N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603 (2d Cir. 1998). "When a defendant moves for dismissal on forum non conveniens grounds, it bears the burden of showing both that [1] an adequate alternative forum exists and [2] that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Interface Partners Intern. Ltd. v. Hananel*, 575 F.3d 97, 101 (1st Cir. 2009) (quoting *Iragorri v. Int'l Elevator, Inc.,* 203 F.3d 8, 12 (1st Cir. 2000)).

   The first condition is usually met "if the defendant demonstrates that the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there." *Hananel*, 575 F.3d at 101 (quoting *Iragorri,* 203 F.3d at 12).  "Courts routinely hold that Israel is a proper forum and dismiss cases on the grounds that it would be more appropriate to hear a case in Israel."  *Israel Discount Bank Ltd. v. Schapp*, 505 F. Supp. 2d 651, 659 (C.D. Cal. 2007).  In fact, the Company is already participating in the Israel

---

[6] This Court "has discretion to respond at once to a defendant's forum non conveniens plea, and need not take up first any other threshold objection[,]" including personal jurisdiction.  *Sinochem Intern. Co. Ltd. v. Malaysia Shipping Corp.*, 594 U.S. 422, 425 (2007).

Lawsuit and has alleged comparable facts against Alroy as it alleges in the Complaint.

To satisfy the second condition, "the defendant must show that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal." *Iragorri,* 203 F.3d at 12.  Regarding the parties' private interest factors, the First Circuit has stated that:

> Considerations relevant to the litigants' private interests include 'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [the] possibility of view of premises, if view would be appropriate to the action; ... [and the trial judge's consideration of] all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.*

These private factors weight in favor of dismissal.  Alroy's actions subject to the Complaint and his tenure with the Company occurred predominately in Israel.  The relative availability of the multiple witnesses, documents, and other relevant evidence that is located in Israel, as opposed to Massachusetts, strongly favors dismissal.  *See Interface Partners Int'l, Ltd.*, 575 F.3d at 103–5 (affirming forum non conveniens dismissal when, among other things, relevant witnesses and documents were located in Israel).[7]  The costs, burdens, and lack of compulsory process over such persons and things in Israel impose significant burdens on Alroy, and may preclude a fair and just adjudication of the parties' claims in Massachusetts.

---

7 In *Interface Partners* the First Circuit noted:

> Consistent with our case law, the fact that the events relating to [defendant's] alleged misconduct occurred in Israel weighs heavily in favor of the foreign forum. *See Howe v. Goldcorp Invest., Ltd.*, 946 F.2d 944, 951 (1st Cir.1991) (holding that the balance of conveniences favor with "unusual strength" the Canadian defendants seeking a Canadian forum because "[t]he relevant events surrounding both plaintiff's 'misrepresentation' and 'breach of fiduciary duty' claims took place in Canada, not in the United States"); *see also Piper,* 454 U.S. at 257-58, 102 S.Ct. 252 (holding that because "[a] large proportion of the relevant evidence is located in Great Britain" it was not unreasonable for the district court to conclude "that fewer evidentiary problems would be posed if the trial were held in Scotland").

575 F.3d at 104.

For the public interest factors, the First Circuit has stated that courts should consider "such things as the administrative difficulties of docket congestion; the general goal of 'having localized controversies decided at home,' and concomitantly, ease of access to the proceedings on the part of interested citizens; the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty." *Iragorri,* 203 F.3d at 12.  These public interest factors favor dismissal.  The parties' contractual agreement is governed by Israeli law and contains a forum selection clause specifying Israeli courts.  In addition, the situs of Alroy's alleged tortuous conduct is Israel.  Thus, such claims will be interpreted under the laws of the State of Israel. This weighs in favor of adjudicating this action in Israel.  *See Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1074–75 (S.D.N.Y. 1992).  These considerations all militate in favor of a trial of the plaintiff's claims in Israel, not Massachusetts.  *See id.* at 1076.

## III.   The Mandatory Forum Selection Clause in the Employment Agreement Applies to the Plaintiff's Claims

A mandatory forum selection clause is an independent and sufficient ground for dismissal of this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[8]  The terms of the forum selection clause in the Employment Agreement subject "any matter arising out of or in connection with" that agreement to adjudication before the Tel-Aviv Regional Labor Court.  Not only are the Company's contract-based claims subject to this provision, but also its tort claims.

The Court has not "accept[ed] the invitation to reward attempts to evade enforcement of forum selection agreements through artful pleading of tort claims in the context of a contract dispute."  *Optasite, Inc. v. Robinson*, C.A. No. 07-40023, 2007 WL 2259106, at *2 (D. Mass. July 31, 2007) (quoting *Lambert*, 983 F.2d at 1121).  A forum selection clause applies to non-

---

[8]  In the First Circuit, when a party seeks dismissal on the basis of a forum selection clause, the motion is treated as one for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Optasite, Inc. v. Robinson*, No. 07-40023-FDS, 2007 WL 2259106, at *2 n.2 (D. Mass. July 31, 2007).

contract claims "where the basic source of any duty owed by defendants to the plaintiff is derived from the contractual relationship structured by the underlying agreement." *Doe v. Seacamp Ass'n, Inc.*, 276 F. Supp. 2d 222, 228 (D. Mass. 2003). "Therefore, contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Optasite*, 2007 WL 2259106, at *2 (quotation marks omitted) (quoting *Lambert*, 983 F.2d at 1121-22 (holding forum selection clause applicable to contract claims and related tort claims)); *McAdams v. Mass. Mut. Life Ins. Co.,* 2002 WL 1067449, at *12 (D. Mass. May 15, 2002) ("a choice of law provision should apply to non-contract claims where the basic source of any duty owed by defendants to the plaintiff is derived from the contractual relationship structured by the underlying agreement").

As explained *supra*, the implied covenant of good faith and fair dealing only exists in connection with a contractual agreement. The only contract referenced in the Complaint is the Employment Agreement. Thus, this claim (Count Three) necessarily arises out of the Employment Agreement and is therefore subject to the forum selection clause therein.

Counts One (breach of fiduciary duty) and Two (corporate waste and mismanagement) of the Complaint also arise out of and are alleged in connection with the Employment Agreement. The factual allegations supporting these claims arise from the same duties Alroy owed the Company under the Employment Agreement.[9]

---

[9] These claims include: (1) Alroy's operation of EDMISO, *see* Employment Agreement, ¶ 2 ("The Employee shall devote his entire business time and attention to the business of the Company and shall not undertake or accept any other paid or unpaid employment or occupation or engage in any other business activity, except with the prior written consent of the Company"); (2) Alroy's treatment of the company as his own personal property and claiming ownership of company equipment, *see* Employment Agreement ¶ 6(b)(ii) (upon termination or lapse of the Notice Period, "the Employee shall immediately return possession of any assets belonging to the Company . . . and any other property of the Company that was provided to the Employee, to the Company"); and (3) Alroy's failure to cooperate with transition of new CEO, *see* Employment Agreement ¶ 8 ("During the Notice Period and unless otherwise determined by the Company in a written notice to the Employee . . . the Employee shall cooperate with the Company and assist the Company with the integration into the Company of the person who will assume the Employee's responsibilities"); *see* Employment Agreement, ¶ 1(b) ("The Employee shall perform his duties diligently, conscientiously and in furtherance of the Company's best interests").

The factual allegations underpinning all three counts in the Complaint are largely the same.[10]  Indeed, the Company has alleged identical factual assertions against Alroy in support of both its contract and tort claims.[11]  Thus, the Complaint, on its face, demonstrates that the Company's claims against Alroy emanate from the same core set of facts.  In *Reder Enterprises v. Loomis, Fargo & Co.*, the Court observed that the applicability of a forum selection clause was unaffected by the fact that the plaintiff's complaint did not cite the parties' contractual agreement or letter of intent, which included the operative forum selection clause.  490 F. Supp. 2d 111, 116 (D. Mass. 2007).  Regardless, the forum selection clause, which governed "any claim related to or arising from" the contract at issue, "covered not only claims directly based on that contract but, as well, tort claims that grew out of the contractual relationship."  *Id.*  Likewise here, the Employment Agreement's forum selection clause governs the causes of action in the Complaint, making Israel the proper forum in this action.

---

[10]   The Company cites precisely the same set of factual allegations for both tort claims and contract claims. Specifically, Count One (fiduciary duty) and Count Three (breach of the implied covenant of good faith and fair dealing) employ identical language regarding the alleged improper acts by Alroy:

> (i) falsely causing the dismissal of co-founder Mr. Shariv; (ii) treating the Company as Defendant's own personal property; (iii) failing to account his actions to the Company's Board; (iv) unilaterally hiring his wife as a Company employee and permitting his son to use Company offices without authorization; (iv) failing to disclose the actual status of the Company's only Product, instead intentionally covering up development problems with the Product; (v) misusing and wasting corporate funds and assets; (vi) baselessly claiming purported ownership to Company assets and equipment; (vii) failing to cooperate with the Company in connection with transitioning his role to the new CEO; and (vii) impeding and attempt blocking critical investment rounds; and (ix) continuing to operate his own personal company to the detriment of the Company and its shareholders.

(Compl., ¶¶ 54 & 65.)

[11] *Id.*

## CONCLUSION

By reason of the above, Alroy respectfully requests an order from this Court dismissing the Complaint.

Respectfully submitted,

GUY ALROY,
By his attorney,

/s/ Matthew P. Horvitz
Matthew P. Horvitz
BBO #:  664136
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110
617-737-3100 / 617-670-8732 (fax)
mhorvitz@cmjlaw.com

Dated:  March 1, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2012, I electronically filed the foregoing with the

Clerk's Office using the Court's CM/ECF system, which will send notification of this filing

(NEF) to all registered participants

/s/ Matthew P. Horvitz
Matthew P. Horvitz